# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES E. RITTER<br>1052 Lode Star Drive<br>Roaming Shores, OH 44084<br><br>        Plaintiff,<br><br>    v.<br><br>SCHINDLER ELEVATOR CORP.<br>C/O CT Corp., Statutory Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>XYZ Corporations 1-5<br><br>and<br><br>John/Jane Does 1-5<br><br>        Defendants. | CASE NO.:<br><br>JUDGE:<br><br>**COMPLAINT**<br><br>*JURY DEMAND ENDORSED HEREON* |

NOW COMES Plaintiff, James E. Ritter, by and through undersigned counsel, and for his Complaint against Schindler Elevator Corp., XYZ Corporations 1-5, and John/Jane Does 1-5 states as follows:

## THE PARTIES

1. Plaintiff James E. Ritter is a United States citizen and a resident of the State of Ohio.

2. Plaintiff is a "person" and an "employee" within the meaning of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 *et seq*. Plaintiff is a "person" and an "employee" as those terms are defined under Ohio R.C. § 4112.01(A)(1) and (3). Plaintiff is presently fifty-three (53) years of age.

3. Defendant Schindler Elevator Corporation ("Schindler") is a foreign corporation which regularly transacts business within the State of Ohio. Schindler is a "person" and an "employer" as defined under the ADEA. Schindler is also a "person" and an "employer" as those terms are defined by Ohio R.C. § 4112.01(A)(1) and (2).

4. XYZ Corporations 1-5 and John/Jane Does 1-5 are entities and/or individuals, other than those specifically identified as Defendants, responsible for interfering with any of the legal rights which are now, or upon amendment may be, the subject of this litigation. The Complaint will be amended to include the names of such individuals and/or entities as they become known to Plaintiff.

## JURISDICTION AND VENUE

5. This Court has proper jurisdiction over Plaintiff's ADEA claims pursuant to 28 U.S.C. § 1331 as they involve questions of federal law. This Court also has original jurisdiction over this action insofar as it involves citizens of different states and the amount in controversy exceeds $75,000.

6. Further, this Court properly has jurisdiction over Plaintiff's claims because Plaintiff has dual-filed a Charge of Discrimination with the Ohio Civil Rights Commission ("OCRC" Case No. CLEA4(48204)12172022) and Equal Employment Opportunity Commission ("EEOC" Case No. 22A-2023-01392) and received a notice of dismissal and right to sue.

7. Plaintiff has complied with all jurisdictional prerequisites and this Complaint has been timely filed.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391 because the events giving rise to this action occurred within this judicial district.

9. This Court has jurisdiction over Schindler pursuant to Fed. R. Civ. P. 4(k)(1)(a) and Ohio R.C. 2307.382 because, among other things, Schindler transacts business in Ohio, contracts to supply goods or services in Ohio, and caused tortious injury in Ohio.

10. This Court also has supplemental jurisdiction over Plaintiff's state laws claims pursuant to 28 U.S.C. 1367 because that claim is so related to Plaintiff's federal claims as to form part of the same case or controversy.

## FACTUAL ALLEGATIONS

11. Plaintiff was first hired by Schindler in or about 1998. Over the next two-plus decades, Plaintiff worked for Schindler in a variety of management roles and locations.

12. In 2007, Schindler assigned Plaintiff to be the District Manager (and later General Manager) of its sales and service operations in Cleveland, Ohio, a district that was widely considered to be underperforming. In this role, Plaintiff oversaw a team of more than 100 employees.

13. Over eight-plus years at the helm of the Cleveland office, Plaintiff transformed the office, increasing profitability, employee morale, and customer satisfaction. Under Plaintiff's leadership, the Cleveland District was recognized by outside consultants as a model operation that could serve as a template for how other districts throughout Schindler should operate and received multiple Schindler awards for performance.

14. In mid-2014 Plaintiff was promoted to serve as Area General Manager (a role now referred to as Territory Vice President) for the Chicago region covering Schindler offices in nine states. In this role, Plaintiff was nominated at Schindler's annual national meeting for having a "Best-in-Class Territory."

15. Subsequently, from February 2017 through July 2018, Plaintiff served as the Area General Manager for a region that encompassed Indiana, Kentucky, Michigan, Ohio, Pennsylvania, and West Virginia. Under Plaintiff's leadership, the territory received the Best-In-Class Territory Award, denoting the highest performing territory in Schindler's operations in the United States for 2017 and 2018.

16. In early 2020, following a stint in a role in Schindler's corporate headquarters, Plaintiff was named Vice President, Territory and District Operations. Plaintiff worked out of his home in Northeast Ohio and was also assigned to work out of Schindler's Cleveland area office.

17. Plaintiff worked to train and coach individuals who were underperforming in Branch, District, and General Manager roles. As well, Plaintiff served as a *de facto* interim General Manager for districts where those roles were vacant. Plaintiff was successful in this role, ultimately overseeing improvement in each of the approximately one dozen offices in his territory.

18. Despite his success in the Vice President, Territory and District Operations role, Plaintiff wanted to return to a permanent Territory Vice President role.

19. In Summer 2021, Plaintiff spoke with Paul Bloom, his immediate supervisor and Schindler's then- Senior Vice President Area North, about his interest in an open Territory Vice President role for the Pittsburgh territory. The Pittsburgh territory covered many of the same states where Plaintiff had a track record of success, including Kentucky, Indiana, Ohio, West Virginia and Pennsylvania.

20. During that conversation, Mr. Bloom inquired how much longer Plaintiff intended to work. Plaintiff pushed back, telling Mr. Bloom that he did not think he could ask that question. Mr. Bloom responded by saying: "Well, I'm asking it." Plaintiff advised Mr. Bloom that he had no plans to retire.

4

21. Plaintiff also had a conversation with Mike Yurchuk, Schindler's Senior Vice President, Human Resources, about his interest in the open Territory Vice President position. Mr. Yurchuk advised Plaintiff that Schindler did not view him as a "motivational leader" and a good candidate for what Schindler wanted "moving forward."

22. Mr. Yurchuk advised Plaintiff that, as a result, he would not be considered for future Territory Vice President positions and should not bother applying for any such future job openings.

23. The Pittsburgh Territory Vice President position was ultimately awarded to Jennifer Bowen, a less experienced candidate who is more than a decade younger than Plaintiff.

24. Similarly, in Spring 2022 Ashley Timmons, a less experienced, less qualified Schindler employee who is nearly twenty years younger than Plaintiff was announced as the new Territory Vice President for the Kansas City region. Ms. Timmons was selected instead of Plaintiff even though Plaintiff had successfully managed a portion of the Kansas City region (Minneapolis, Des Moines, Omaha, St. Louis, and Kansas City offices) a few years prior.

25. In Spring 2022, Plaintiff expressed interest in an open Territory Vice President position for the Chicago territory which included Illinois, Wisconsin, and Michigan.

26. After learning of his interest in the position, Mr. Bloom inquired about Plaintiff's age and again asked when Plaintiff expected to retire. When Plaintiff again indicated that he had no plans to retire, and further pushed to interview for the open position, he was reluctantly given the opportunity.

27. After interviewing for the Chicago position, Mr. Bloom advised Plaintiff that the position was being awarded to Blake Jolivette, a less experienced, less qualified employee more

than twenty years younger than Plaintiff. Mr. Bloom advised Plaintiff that he was not selected for the position because he did not "fit" in the "next generation of leaders" at Schindler.

28. Plaintiff subsequently objected, in writing, to Schindler's decision not to hire him for the position based upon its perception about his suitability to be a "next generation" leader with the company.

29. In mid-October 2022, at the age of 53, Plaintiff was advised that his employment was being terminated by Schindler as part of a reduction in force.

30. Notably, Ms. Bowen, Ms. Timmons, and Mr. Jolivette – the three substantially younger employees who were awarded Territory Vice Presidents positions over Plaintiff in the year prior to the reduction in force – were not terminated.

31. At the time of Plaintiff's termination, there was an opening for Territory Vice President for the Pittsburgh region, a position that became available when Ms. Bowen was promoted to Senior Vice President.

32. Plaintiff expressed interest in this position, pointing to his prior success in that very region, including improvements in the financial performance of the territory and Company-wide recognition of the territory while under his leadership.

33. Despite this track record of success in the Pittsburgh territory only a few years earlier, Plaintiff was never interviewed for the role and, instead, the position was awarded to a less qualified employee in his 30s.

34. Following his termination, Plaintiff advised Schindler that he had retained counsel and intended to pursue claims against the company. Shortly thereafter, Plaintiff was advised that Schindler opposed his request for unemployment compensation, claiming that he had been terminated for violating a "company policy."

35. At no time was Plaintiff ever advised that his termination was based on a violation of a company policy. Schindler's representation in this regard to the Ohio Department of Job and Family Services was not only inaccurate but was also directly at odds with its prior contention that Plaintiff was terminated as part of a reduction in force.

**COUNT ONE**
**(Age Discrimination – 29 U.S.C. 621 *et seq.* and 42 U.S.C. 4112.01 *et seq*.)**

36. Plaintiff incorporates by reference the allegations from the preceding paragraphs as if fully rewritten herein.

37. Plaintiff was born in 1969 and at all times relevant hereto was over forty (40) years of age.

38. Plaintiff is and was qualified for all of the positions he held at Schindler, as well as all positions for which he applied or otherwise expressed interest, including, but not limited to, those positions that were awarded to Ms. Bowen, Ms. Timmons, and Mr. Jolivette and the Pittsburgh position for which he applied following his termination.

39. Plaintiff has been subjected to adverse employment actions on account of his age, including, but not limited to, failing to hire him for the open Territory Vice President positions, otherwise denying him opportunities for advancement, and ultimately terminating his employment.

40. Schindler treated similarly situated, albeit less qualified and substantially younger employees more favorably by, among other things, awarding them positions for which Plaintiff was more qualified, allowing them opportunities, and not terminating their employment.

41. Schindler's explanation for these adverse employment actions was and is pretextual.

42. Schindler's actions were motivated by unlawful discriminatory animus on account of Plaintiff's age.

43. Schindler's conduct violated 29 U.S.C. 621 *et seq.* and Ohio Revised Code 4112.02.

44. As a direct and proximate result of Schindler's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages for which Schindler is liable, including, but not limited to, the loss of past and future compensation, wages, bonuses, incentive compensation, benefits, emotional distress, pain and suffering, and other privileges and conditions of employment.

45. Schindler intentionally, willfully, wantonly, recklessly, and maliciously violated Plaintiff's rights under federal and state law.

46. Schindler is liable to Plaintiff for past and future economic and non-economic compensatory damages, back pay, front pay, punitive damages, attorneys' fees, expert fees, costs, interest, and any equitable relief that this Court deems appropriate.

**COUNT TWO**
**(Retaliation – 29 U.S.C. 621 *et seq.* and 42 U.S.C. 4112.01 *et seq.*)**

47. Plaintiff incorporates by reference the allegations from the preceding paragraphs as if fully rewritten herein.

48. Plaintiff engaged in protected activity by, among other things, objecting to Schindler's repeated and unlawful inquires about this age and plans for retirement, and objecting to Schindler's suggestion that he was not part of Schindler's "next generation of leaders," all of which were thinly veiled expressions of Schindler's unlawful animus towards older workers. Plaintiff also engaged in protected activity insofar as he continued to apply for open Territory Vice President roles even after Schindler's repeated selection of younger, less qualified candidates for

such roles demonstrated a clear pattern of age discrimination. Plaintiff also engaged in protected activity by retaining counsel and expressing his intent to assert claims against Schindler.

49. Schindler was aware of Plaintiff's protected activity.

50. Schindler took adverse action against Plaintiff including, but not limited to, failing to appoint him to open positions where he was the most qualified candidate, terminating his employment, and fighting his attempt to secure unemployment compensation benefits.

51. There is a causal connection between Plaintiff's protected activity and the adverse actions taken against him.

52. Schindler's conduct violated 29 U.S.C. 621 *et seq*. and Ohio Revised Code 4112.02.

53. As a direct and proximate result of Schindler's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages for which Schindler is liable, including, but not limited to, the loss of past and future compensation, wages, bonuses, incentive compensation, benefits, emotional distress, pain and suffering, and other privileges and conditions of employment.

54. Schindler intentionally, willfully, wantonly, recklessly, and maliciously violated Plaintiff's rights under federal and state law.

55. Schindler is liable to Plaintiff for past and future economic and non-economic compensatory damages, back pay, front pay, punitive damages, attorneys' fees, expert fees, costs, interest, and any equitable relief that this Court deems appropriate.

WHEREFORE, Plaintiff prays for the following relief:

A. Any and all remedies available under the Age Discrimination in Employment Act and Ohio's anti-discrimination statute, including, but not limited to, past and future economic and non-economic damages in an amount in excess of seventy-five thousand dollars, back pay, front pay, lost benefits, promotion, punitive damages, interest, all attorney's fees, expert fees, and costs.

B. Any and all other relief that this Court deems just and appropriate.

        Respectfully submitted,

        */s/ Daniel M. Connell*
        Andrew A. Kabat (0063720)
        Shannon J. Polk (0072891)
        Daniel M. Connell (0078418)
        Polk Kabat, LLP
        1300 W. 78th Street, Suite 305
        Cleveland, OH 44102
        (216) 241-0700
        Fax: (216) 241-0739
        akabat@polkkabat.com
        spolk@polkkabat.com
        dconnell@polkkabat.com

        *Attorneys for Plaintiff*
        *James Ritter*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims able to be tried to a jury.

        */s/ Daniel M. Connell*
        Andrew A. Kabat (0063720)
        Shannon J. Polk (0072891)
        Daniel M. Connell (0078418)